## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BROOKE CUNNINGHAM** | : | |
| c/o The Friedmann Firm | : | |
| 3740 Ridge Mill Dr. | : | |
| Hilliard, OH 43026 | : | |
| | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:23-cv-1677 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| | : | |
| **QUICKLOADZ CONTAINER** | : | **Jury Demand Endorsed Herein** |
| **SYSTEM, LLC** | : | |
| 5850 Industrial Dr. | : | |
| Athens, Ohio 45701 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

NOW COMES Plaintiff Brooke Cunningham ("Plaintiff") and proffers this Complaint for damages against Defendant QuickLoadz Container System, LLC ("Defendant").

## THE PARTIES

1.      Plaintiff is a natural person residing in Meigs County, Ohio.

2.      Defendant QuickLoadz Container System, LLC is a Domestic Limited Liability Company doing business in the Southern District of Ohio.

3.      Plaintiff was an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq* and the Ohio Civil Rights Act, R.C. § 4112 at all relevant times herein.

4.  Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*. and the Ohio Civil Rights Act, R.C. § 4112.

## JURISDICTION AND VENUE

5.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and Ohio Laws of Discrimination.  This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

6.  Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio, Plaintiff performed her job duties there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

7.  Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as "Exhibit A."

## FACTUAL BACKGROUND

8.  Brooke Cunningham ("Plaintiff") was hired by QuickLoadz Container System, LLC ("Defendant") on or about September 5, 2022, as an Administrative Assitant.

9.  Plaintiff's performance and disciplinary history was devoid of any significant issues until she reported concerns of sexual harassment to Defendant.

10.  Approximately one month into her employment with Defendant, Plaintiff began to experience sexual harassment by her direct supervisor, Ash O'Brien (Director of Operations).

11. At all relevant times herein, Plaintiff was 25 years old.

12. Upon information and belief, Mr. O'Brien is at least ten years older than Plaintiff.

13. Mr. O'Brien often touched Plaintiff without her consent. Plaintiff shared an office with Mr. O'Brien in which her desk was placed behind his. If Plaintiff asked Mr. O'Brien a question, he would roll his chair up next to hers and place his hand on her leg as he answered her question.

14. Mr. O'Brien frequently poked Plaintiff in her ribs because he knew she was ticklish.

15. On two occasions, Mr. O'Brien placed his hand over Plaintiff's mouth and kissed his hand while it was on her face.

16. Mr. O'Brien made sexual comments to Plaintiff. He nicknamed her Tulsa, and asked her to spell it backwards out loud, which is "A-Slut."

17. Mr. O'Brien told Plaintiff that he wants to "smack her ass" every time that he entered the office behind her, and that he had to "resist the urge" to do so every time.

18. Plaintiff was extremely uncomfortable by Mr. O'Brien's sexual harassment of her, so she reported it to Defendant.

19. On November 3, 2022, Plaintiff asked Defendant's CFO Bridget Lair for a private meeting to report Mr. O'Brien's harassment of her.

20. Ms. Lair indicated that company founder Sean Jones was present with her and asked if it was okay if he was present for the meeting.

21. Plaintiff told Ms. Lair that she feared judgment from Mr. Jones because she wanted to discuss concerns about Mr. O'Brien, who was well-liked by Mr. Jones.

22.     Plaintiff expressed to Ms. Lair that she feared Mr. Jones would not believe her allegations based on his employment relationship with Mr. O'Brien.

23.     Therefore, Ms. Lair and Plaintiff spoke privately about Mr. O'Brien's sexual harassment of her, without Mr. Jones' presence.

24.     Plaintiff reported several examples of sexual harassment to Ms. Lair, who stated that she would talk to Mr. O'Brien about what conduct was appropriate in the workplace.

25.     Defendant offered no other remedy to the harassment.

26.     Immediately thereafter, Mr. O'Brien and Ms. Lair began retaliating against Plaintiff.

27.     Mr. O'Brien's tone toward Plaintiff became hostile immediately after she reported him to Defendant. He began singling Plaintiff out for things other employees did, such wearing the wrong shoes to work in the shop.

28.     If Plaintiff called off work and notified any other manager but Mr. O'Brien, he would report her as a no call, no show, putting her at risk for disciplinary action.

29.     Ms. Lair's tone toward Plaintiff became hostile, and she began nitpicking at Plaintiff's performance, which was not an issue prior to her report of Mr. O'Brien.

30.     Plaintiff received no write-ups prior to her termination and did not receive any written performance review.

31.     On December 6, 2022, Ms. Lair abruptly terminated Plaintiff in a meeting that began as a 90-day performance evaluation.

32.     Ms. Lair began the meeting by stating that it was Plaintiff's 90-day mark of employment and that she could start with a typical performance review.

33. However, Ms. Lair abruptly pivoted and said she would address the "elephant in the room," which was Plaintiff's discomfort in her working environment with Mr. O'Brien and perceived retaliation for her reports of sexual harassment.

34. Ms. Lair then revisited the topic of Plaintiff's performance and accused her of various performance issues, completely ignoring Plaintiff's discomfort working with a direct supervisor who touched her without her consent on several occasions and nicknamed her "slut."

35. Ms. Lair allegedly terminated Plaintiff for not improving her performance by the 90-day mark of employment.

36. However, the meeting clearly began as a performance evaluation and ended as a termination because Plaintiff opposed sexual harassment and reported retaliation by Ms. Lair and by Mr. O'Brien for reporting the harassment to Defendant.

37. There was no indication otherwise that Plaintiff would be terminated in the meeting.

38. Once Plaintiff opposed the sexual harassment and retaliation for reporting the sexual harassment, Defendant terminated Plaintiff's employment.

39. The circumstances surrounding Plaintiff's termination provide an inference of unlawful conduct because Plaintiff was terminated from her employment by the individual to whom she reported sexual harassment, who had incentive to protect herself and the company from liability for the company's failure to address the allegations regarding Mr. O'Brien's conduct.

40. The proffered reasons for termination are pretextual.

5

## COUNT I - TITLE VII
### Quid Pro Quo Sexual Harassment/Sexual Harassment by a Supervisor

41.     Plaintiff reasserts and reincorporates each and every allegation in the preceding paragraphs as if fully rewritten herein.

42.     Defendant engaged in conduct that violates Title VII prohibiting sex discrimination by sexually harassing Plaintiff, by creating and encouraging a hostile work environment for Plaintiff, and by terminating Plaintiff because she opposed her supervisor's sexual harassment.

43.     Plaintiff was subjected to unwelcomed sexual harassment in the form of sexual advances, physical touching, and sexual commentary by her immediate supervisor, Ash O'Brien.

44.     The harassment of Plaintiff by Mr. O'Brien was unwelcome, which was indicated by Plaintiff.

45.     The harassment was based on Plaintiff's sex because Mr. O'Brien's comments were sexual in nature, and on more than one occasion, he tried to kiss her.

46.     The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of employment.

47.     Plaintiff received negative feedback from Defendant immediately after reporting Mr. O'Brien's sexual harassment of her.

48.     Plaintiff became so uncomfortable under the supervision of Mr. O'Brien, and she attempted to address it during her 90-day performance review with Ms. Lair.

49.     Plaintiff's opposition to the sexual harassment resulted in her termination because she was terminated during the performance review, immediately after seeking to discuss the harassment and retaliation with Ms. Lair.

6

50. Because Mr. O'Brien was Plaintiff's supervisor and her opposition of his sexual harassment resulted in her termination, Defendant is not entitled to an affirmative defense and is strictly liable for Mr. O'Brien's conduct and the termination of Plaintiff.

51. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, serious emotional distress, loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

52. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**<u>COUNT II - TITLE VII</u>**
**Retaliation**

53. Plaintiff reasserts and reincorporates each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

54. Plaintiff engaged in a protected activity by, *inter alia*, opposing the sexual harassment and hostile work environment.

55. Defendant was aware that Plaintiff engaged in protected activity because Plaintiff reported the sexual harassment and hostile work environment to Defendant on or about November 3, 2022.

56. Plaintiff also reported the sexual harassment, hostile work environment, and subsequent retaliation to Defendant on December 6, 2022.

57. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against her terminating her employment immediately, by refusing to remedy the situation, refusing to provide a reasonable and non-hostile work environment, and

otherwise discriminating against her in the terms, privileges, and conditions of her employment.

58.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, pain and suffering and the loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

59.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT III - Ohio Civil Rights Act
### Quid Pro Quo Sexual Harassment/Sexual Harassment by a Supervisor

60.     Plaintiff reasserts and reincorporates each and every allegation in the preceding paragraphs as if fully rewritten herein.

61.     Defendants engaged in conduct that violates R.C. § 4112 prohibiting sex discrimination by sexually harassing Plaintiff, by creating and encouraging a hostile work environment for Plaintiff, and by terminating Plaintiff because she opposed sexual harassment by her supervisor.

62.     The harassment of Plaintiff by Mr. O'Brien was unwelcome, which was indicated by Plaintiff.

63.     The harassment was based on Plaintiff's sex.

64.     The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of employment.

65.     Plaintiff's opposition to the sexual harassment resulted in her termination because she was terminated immediately after opposing the sexual harassment and hostile work environment on December 6, 2022.

66.     Because Mr. O'Brien was Plaintiff's supervisor, and her opposition of his sexual harassment resulted in her termination, Defendant is not entitled to an affirmative defense and is strictly liable for Mr. O'Brien's conduct and the termination of Plaintiff.

67.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, serious emotional distress, loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

68.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT IV - Ohio Civil Rights Act
### Retaliation

69.     Plaintiff reasserts and reincorporates each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

70.     Plaintiff engaged in a protected activity by, *inter alia*, opposing the sexual harassment and hostile work environment caused by her immediate supervisor, Mr. O'Brien.

71.     Defendant was aware that Plaintiff engaged in a protected activity because she reported the sexual harassment to Defendant's CFO twice, including the day of her termination.

9

72. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against her by terminating her employment, by refusing to remedy the situation, refusing to provide a reasonable and non-hostile work environment, and otherwise discriminating against her in the terms, privileges, and conditions of her employment.

73. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but not limited to, pain and suffering and the loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is are liable.

74. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Jamie R. Bailey, Esq.*
Jamie R. Bailey (0099789)
*Jamie@thefriedmannfirm.com*
Rachel Sabo Friedmann (0089226)
*Rachel@thefriedmannfirm.com*
**The Friedmann Firm LLC**
3740 Ridge Mill Dr.

Hilliard, Ohio 43026
Phone: (614) 639-6477
Fax: (614) 737-9812

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Jamie R. Bailey, Esq.*
Jamie R. Bailey (0099789)

11